Good morning, Your Honors. May it please the Court, Raymond Brown from the Aguilera Law Group on behalf of St. Paul Fire & Marine Insurance Company. I'd like to reserve two minutes for rebuttal. The heart of the dispute before the Court today is whether the underlying Coelho action gave rise to a mere potential of liability against Vadnais for damages occurring during the steadfast 1996-1997 policy period. Under Montrose, steadfast had a duty to defend as long as there existed even a mere potential covered injuries or damages could have occurred during its policy period. And to prevail on its summary judgment motion in the District Court, steadfast had to establish that the underlying claim, by no conceivable theory, could possibly fall within its policy coverage. And, again, under Montrose, any doubts had to be resolved in the insured's favor. Moreover, the third-party plaintiff who drafted the complaint, Coelho, is not the arbiter of the policy's coverage. As a result, the determination is supposed to be based on the facts known by the insurer, not the application of those facts as pled by the third party. So the question presented is whether there was even a mere possibility that the Coelho action, by any conceivable theory, raised the issue of liability against Vadnais for erosion to surrounding land between 1996 and 1997, steadfast policy period. Steadfast argues ---- Roberts. May I stop you just one second? Sure. I think you said, cited the rule that you, insurers obligated go beyond the pleadings in terms of analyzing the duty to defend. Where do you think that a ---- where do you think what facts are outside the pleadings that you think put everyone on notice that we ought to take into consideration? The relevant facts that apply here are the expert for Coelho and the underlying matter and St. Paul's expert. Okay. Great. Thanks. Steadfast argues that St. Paul has not established that Vadnais could have been held liable for such damages. Essentially because the complaint did not specifically allege erosion to surrounding land or that Coelho was seeking damages for such erosion. But with all due respect, that is not the standard. The burden was on Steadfast to show that the allegations of the complaint and the facts available could not, under any theory, give rise to the mere potential of damages against Vadnais for erosion. Here, the allegations of the complaint and the facts available to Steadfast indicate the pipeline, at least present evidence that the pipeline was defective at the time it was installed in 1995, began to corrode immediately, and began leaking within three to six months thereafter. That, and Coelho claimed that the leaks ultimately resulted in a sinkhole that caused a car accident in 2006. The existence of water leaking into the surrounding soil for ten years certainly gave rise to the mere potential, if not the certainty, of erosion of that surrounding land, which is further supported by the ultimate development of the sinkhole. The complaint filed by Coelho further sought, quote, incidental and consequential damages and payment of damages to third parties consisting of property and personal injury payments, close quote. As such, although the complaint did not specifically name damages to third parties due to erosion, the facts available to Steadfast put them on notice that there was the possibility of such damages. In fact, there was the clear likelihood of such damages, and Coelho was seeking damages for payments to third parties consisting of property and personal injury payments, since the mere potential for covered damages against Vadnais was raised by the Coelho actions, Steadfast therefore owed a duty to defend Vadnais. That's everything I have, unless Your Honors have any questions. So you're – what troubles me about this case is you give an under – there's an underground pipe that begins to leak, and it's apparently at a level at which there's not an immediate visible surface consequence, and nothing led anybody to detect it. We go down the road, what, ten years? Ten years, correct. Ten years, and ultimately the erosion does in fact produce a sinkhole and some flooding. So the complainant in the case was looking for a recovery of lost water, right? In other words, the plaintiff in the case, underlying case, was looking for a recovery of – wasn't looking for the – what was it, I mean, looking for? Well, they were looking for a number of things. One of them was the loss of the water that leaked. Yeah. They were also – That's what they suffered. Well, they were also seeking to recover – well, they were seeking to shift the liability to Vadnais for any damages that resulted from the failure of the pipe. Now, they specified a couple of elements of those damages, but it was by no means comprehensive. What they said was incidental and consequential damages and payment of damages to third parties, and among those was the sinkhole, which caused a car accident. But that happened – that as an occurrence would have been way later, right? Correct. Well, the car accident occurred way later. Right. So why isn't that for purposes – why isn't there a limitation or non-limitations period? Why is that simply not under the contract for the time that was covered? Well, what we're saying is the erosion of the land happened – Well, I understand that, but how does that translate to a car accident that occurred way later? Well, there's two separate arguments there. One is there was erosion to the surrounding land. Those landowners, there was – this complaint raised the potential – But with regard to the car accident, and there was another similar sort of accident in – There was the flooding of a home. The flooding of a home. Under the policies, aren't those occurrences at the time that they occurred, not much earlier? Well, the argument is that – I understand the argument is that the pipes were – had these problems earlier. But the question is, when you're looking at a third-party accident of this kind, when is it an occurrence under the policy? The damage to the surrounding land happened gradually over the 10 years. I understand that. But in terms of the liability for the occurrence of the accidents in 2007 or whenever they were, isn't that precluded by the policies? Well, the – our argument is that those damages were caused by the subsidence of the land, which occurred gradually over 10 years. But your argument is a series of occurrences, basically, aren't you? Exactly. I mean, that ultimately caused. Exactly. One you can't pinpoint in time. And separately – And then the tort doesn't become complete until the damage – well, I guess the damage occurs from the third party. But – go ahead. I was just going to say, but then separately there was the specter that all of the neighboring landowners who suffered this subsidence of their land over the 10 years, and those damages occurred continuously during the 10-year period, could bring claims for damage for which Coelho was potentially seeking recovery from Badenais, which Steadfast would cover under their policy. Okay. Tim, do you think you have your argument in hand? Good morning. Randy Marmore representing Steadfast Insurance Company. St. Paul's argument is an interesting one and rather a novel one for an insurance company to make. If accepted, it would stretch the borders of the obligations of an insurance company with respect to the duty to defend, I think, far beyond what St. Paul really wants, and certainly far beyond what is necessary or appropriate in this case. First of all, burden of proof is clear in a contribution case. St. Paul is the complaining carrier, has the burden to prove coverage or the potential of coverage under Steadfast policy. I don't think anyone – Right. It's just a potential for coverage. You'd agree with that. That's correct. We're talking about the duty to defend, and you go beyond the pleading, so we have to take into the expert reports. Well, not exactly. You start with the pleadings. Well, of course you do. You start with the complaint, and then you can supplement that by facts or documents or reports that are actually in the possession of the insurance company at the time that the decision has to be made. For instance, they submit a declaration by Dr. Niebuhr, which was prepared in connection with this litigation years down the road. Well, that declaration was never in the hands of Steadfast, even if any of the things in that declaration are at all relevant. You can't submit a declaration in connection with your motion for summary judgment and then use that against the carrier. Well, here's why you should have accepted the tender of defense four or five or six years ago. That's not appropriate. Now, as to the other declaration, the Lewis declaration, which arguably we either had or maybe could have had or should have had at some point, all that says, all that declaration says is that there was corrosion of the pipe. And we don't dispute that. There was corrosion of the pipe. They don't dispute that the repairs to the pipe based upon that corrosion are not covered under anyone's policy, not ours, not theirs, not Clarendon's, not any CGL policy. So what exactly are we talking about covering with regard to the duty to defend? A loss of water claim and these two accident claims? Is that what we're talking about? Well, it's a little bit broader than that. And I think this is very well explained in the district court's opinion. And I think the district court got it absolutely right. And the district court lists six elements of damage. One, the pipeline repairs. That's obvious. Which are out. Excuse me? Which are out. That's right. Okay. Two, the increased costs of pumping water to area farms. Well, that obviously is out also because that could not possibly have occurred until after 1994 when they found out about the problems. So I'm sorry, 2004. So that's out as well. Loss of water due to leaks. We'll get back to that one. Loss of access to credit from Chevron. Again, that could not possibly have occurred until much later. And I don't think St. Paul really argues that that could possibly be covered under a liability policy. Loss of use of the pipeline as an asset. Same thing. That could not possibly have occurred until after discovery of the problems well after the policy period is expired. I don't think St. Paul's claiming anything there. And finally, we have the costs of settling the two cases. Vignola is the flood case and Essary is the bodily injury sinkhole case. We all know that both of those incidents occurred long after, years after the expiration of steadfast policy, years after the expiration of St. Paul's policy. Why does that make a difference in terms of causation analysis? I mean, there are a lot of cases talking about leaking oil, water, whatever, multiple insurers. You can't tell when the trigger was that caused the corrosion, the subsidence, you know, because it's incapable of proof. So. Well, the significance of Essary and Vignola is that they had claims for their own damages. Those claims arose when they were injured. They were not injured until years after steadfast policy expired. It's like an automobile accident. You don't go back five years before the automobile accident because maybe there was problems with the intersection and maybe that's what caused the automobile accident, not the person running a stop sign. Maybe the intersection was defectively constructed. You don't go back to when the intersection was defectively constructed. You go to when the automobile accident occurred and the party was injured. Well, it's the same thing here. And I don't think they're making an argument that the Vignola claims, the flood claim, or the Essary claims are covered under steadfast policy. That's not what they're arguing. They're arguing something different. What they are arguing is that based upon the corrosion in the pipes, and maybe, even though this is, in my view, highly speculative, because corrosion doesn't automatically translate to leaks. Eventually, maybe, but not necessarily right when the pipes are in the ground. And maybe not even eventually. I don't know that corrosion automatically means leaking, but in any event. And leaking doesn't automatically mean erosion. But the automatically doesn't matter here because we're just talking the potential for coverage. All right. I understand. But what they're really arguing here, an argument, and I think this is somewhat important, an argument that was never raised in their motion for summary judgment before the district court. You would think that this is the key argument now. You'd think it would have been raised in their motion for summary judgment. It was never raised. It was mentioned in their oppositions, but not in their motion for summary judgment. And that's the erosion, the erosion argument. And trying to link the erosion argument to the catch-all phrase, incidental and consequential damages, which is not only contained in Coelho's complaint, but you could probably go down to the clerk's office in district court or in San Francisco Superior Court and find similar language in virtually every complaint. Go back to their argument about the two accidents in 2004 or whenever they were. Their argument is essentially that it's that it doesn't matter when those accidents would have been covered, but that their liability for those accidents is a consequence of this continuous erosion, corruption and so on. Is that what they're saying? I think that's what they're saying. And if it is what they're saying, they're wrong, because their liability for the Essary claim could not possibly have arisen until Essary was damaged. And the same thing with Viganola's. It goes to when they are damaged. We don't know anything about any neighboring properties. They may mention this. Well, there could have been damage to neighboring properties. Again, the lawsuit was brought in 2006. These problems were discovered in 1994. Essary and Viganola were in 94, 96, I believe. No. I'm sorry. I got it wrong. 2004. I'm sorry. I got it wrong. But my point is that there was a gap of time, a significant gap of time between the steadfast policy and the complaint being brought, the pipeline being laid. If there was any of this damage similar to Essary or similar to Viganola, it certainly would have materialized before 2008. So when the complaint, and the complaint is very specific, the Coelho complaint is specific as to what their damages are. There's nothing in there about erosion. There's nothing in there about neighboring properties. Isn't it obvious from the nature, at least the sinkhole would suggest that there's a possibility that it would be from erosion over time from a leaky underground pipe? I mean, that's sort of obvious. There's at least one possibility. It may very well be. Well, we don't know that it's leaking over time, and we don't know. I mean, it ostensibly is leaking over time, but we don't know when the damage occurred. The sinkhole occurs is one event. The damage to Essary was one event that occurred years and years after the expiration of steadfast policy. This is not a pollution case. I think this is what you're analyzing. As a pollution case where there's continuous damage that's occurring to neighboring property or to the water over many, many years, and maybe you don't know when it started, you don't know when it stopped. That seems to be their claim, which is that this leak occurred over a period of time. The damage occurred to the earth, which then subsequently, of course, had the sink caused the sinkhole and so forth over a period of time. So their argument would be that there are sufficient facts to put someone on notice of the potential for coverage because this was damage that occurred during some portion of this covered period. I think that seems to be the theory. And I think the district court got it correct when it rejected that argument because it is entirely speculative as to what would have occurred during steadfast policy period. And the only claims, the only claims that anyone knew about was Essary and was Vignola, separate and apart from the claims involving the pipeline. There never were any claims by third parties other than those parties. What about the – you were going to talk about the loss of water versus loss of use of water, and you haven't yet done that. Okay. Again, I think the district court got it right. There may have been, you know, assuming that there was a leak during steadfast policy period, there may have been loss of water. And what the district court stated correctly was that even though water is tangible property, we don't dispute that, the loss of water is not property damage under a general liability policy. The Collin case, which I've cited in the brief, there are a couple of other cases, all stand for that proposition. If you lose property, whether it's converted, whether it's stolen, whether it's negligently lost, whether it's taken. But this wasn't any of those things, right? It was – or put another way, I have a hard time understanding what this means. If somebody totals your car as opposed to making – hurts your car in a way that's fixable, that doesn't affect your responsibility for it, right? No. So the fact that this water is totally gone as opposed to not available for some period of time, why does that make a difference? It only makes – It's not conversion. Nobody's claiming – it's not – the other things that you were talking about are not due to the dynamic, the – that is covered. I mean, what's covered here, this is due to the corrosion. And what happened, or what theoretically happened, is that the water leaked. If you could have, for example, then gone and recovered the water by a pump or something, that would have been a difference? No. I don't think it would have made any difference at all. That would be loss of use of water if you could have recovered it. Well, I don't think – I don't believe that what they were alleging was loss of use of water. I understand. But I just gave you a hypothetical, which would be loss of use of water. If you could have – suppose the water was leaking, but it was leaking into a little pond and you could have gotten it back. And you couldn't have gotten it back. Could have, could have. And then for that period of time that it took you to get it back, maybe there was loss of use of water, theoretically. But that's the difference? In other words, the difference is whether it happened to be leaking into some place where you could get it back or whether it was just leaking and you couldn't get it back. No. I think the difference is whether or not the damages that are being alleged relate to the replacement value of what it is that is being lost or the rental value of – that equates to the loss of use. That's what the – that's the difference. Well, what about my car towing situation? Hypothetically. Your car. Your car is so badly hurt that it's not usable that we know that that is nonetheless covered. So why is that? Well, there would be two aspects to it. If you're suing for a total replacement of the car, then I think that's loss of the vehicle. If you're suing for that period of time that you had to hire or rent a vehicle, rent a car or something for the period of time that the car is being repaired, if it can be repaired, then I think that would constitute loss of use. That's the difference between the two concepts. Okay. And the loss of – even though you don't have the car in the second instance, it's not covered, and I want to know why not. It's not covered in terms of the damages that you are seeking. If you are seeking damages for the replacement of the car – I know you keep telling me that. Where in the policy is that distinction made in the way that you're suggesting it, leaving off side conversion and things like that? It's not – If the injury is the same, but it's just worse, is what you're really saying. Well, the – it's in the policy in terms of the definition of property damage, physical injury or damage to tangible property, and then loss of use of tangible property that has not been physically injured. Okay. So you have the two prongs of the property damage definition, and the way that has been interpreted by the courts, by Collin and by a few other cases, is that the loss of the property itself – and there have been actual cases where the person wanted the insurance company to cover loss of money. They thought that was property damage. And the Court said no, loss of money is not property damage. Loss of tangible property in and of itself is not property damage. May I stop you there, though? Because if I understand, you're conceding that water is tangible property. Yes. True. Well, that's under the Watts case. It's pretty clear. Watts decided that water is tangible property. So let's take a different example, just so I understand what your argument is. Let's say there's a well at issue, and somebody needs water from the well, and some occurrence occurs that prevents the person from getting water in the well. He has to get substitute water. That would be loss of use of tangible property. It depends on what happened to the water. If the water was still there, but for some reason it could not be supplied, then I would agree it's loss of use. If the water was somehow lost and it's no longer there and it cannot be retrieved, such as suggested before, then I think you're talking about – you're not talking about loss of use. You're talking about loss of the water, if they have to then replace that water. Go ahead. Well, it's just a distinction that seems extremely bizarre, because obviously if it's leaked out, you have lost its use. The fact that whether you can get it back or not is a secondary consideration. But the concern is right now I don't have water to use. And what's the – why does it matter whether you can eventually get it back or not? Well, the cases – the cases distinguish those two situations. Again, you may not find that in the policy. It's the Collins case that you're relying on for that? The Collins case. They distinguish those two situations and clearly hold that the loss of the product itself, where the damages you are seeking is replacement value, is not covered under the policy, as distinguished from loss of use, where the damages you are seeking are the rental value of equivalent property. Right. But if they were seeking the rental use of the property, of the water, the water's gone, but what we want in the damages is the loss of use damages. In other words, forget the fact that it's gone. The problem is that during a certain period of time we didn't have use of the water. So why isn't that permissible? Well, under certain circumstances it might be, but that's not what happened here. At least, that's not what the allocation – Well, we don't know what happened here. That's the whole point. It's potential for liability. Yeah, but I'm talking about the damages. The damages that are set forth in the complaint are loss of use – loss of the water, loss of the water supposedly as a result of these leaks. We don't know that that ever occurred. It's entirely speculative. But that's just a question of how you would measure the damages. You could measure the damages by the short-term loss of use of the fact that the water has disappeared. But it's – it seems completely fortuitous and kind of silly to say that even though I haven't in fact lost the use of the water because the water is gone, I'm in worse shape than if the water had been later available to me. It still isn't available to me now. The question – I think the issue involves the damages that you are seeking. If you are seeking the replacement value of the water – Who is seeking in this instance? Because all we're talking – who is seeking? Well, it would have been Coelho. Claims by Coelho. In other words, Coelho theoretically could have said during this period of time because of leaks we lost this amount of water and we had to go out and supply that same amount of water to the area farms because we were contractually obligated to do so. And you don't think that's encompassed within the complaint? No. At least arguably so? Well, it is encompassed within the complaint, at least the allegation is, but it's not covered under the policy. That's what the district court does. Well, I don't think – I mean, you're hypothetical with regard to the fact that they – an alternative way of compensating them for this would be at least for the loss of use of water during the time that they recover. And it amounts to the same thing. They don't have the water. Right. But there really was no – you know, during the steadfast policy period, there really was no loss of use that anyone compensated anyone for because they didn't know about it until many years later. But that's a different question. That's not what you're allying with. Our questions have taken you over your time. Thank you for your argument. Your rebuttal. Thank you, Your Honor. The steadfast was granted summary judgment in the district court. Steadfast counsel has indicated that it was – it was St. Paul's burden. St. Paul has the burden of proof to establish coverage. Before we lose the thread of what was just argued at the end, does – do you disagree with counsel's construction of the policy? I do. Okay. Well, then come back to it when you do. But I wasn't sure you did. I do. Since you're both insurance companies, essentially. The – as to the burden of proof, on steadfast motion, it had the burden to negate even the mere possibility of coverage in order to get summary judgment. And since review before Your Honors is de novo, that's the standard we're looking at. The expert reports below, steadfast counsel mentions that, well, the report that St. Paul submitted, they didn't have until 2011 when it was submitted to the district court, or submitted to them in conjunction with the district court action. But that avoids the – the underlying issue that all of – all the expert report was is one expert going out, looking at the facts, and – and arriving at conclusions. Well, that's – that's true. But – but in terms of notice to an insurance company, there has to be some communication. There's – there's a limited duty to go outside the record of the case. If they're aware of facts that occur that would indicate possibility of – of coverage, they have to take that into account. But I don't think they have a duty to send an expert out to determine their own facts to see whether there's coverage. You disagree with that. True? They could in certain situations. But I agree that in every case, they don't. Yeah. Okay. So what facts should they – what facts should they have known at the time you tendered – the defense was tendered that would have triggered the possibility of coverage, that were known within either alleged in the complaint or communicated to – to your company or somebody else? Well, they do have a duty to go out and investigate. And during the pendency of the underlying action, they had access to the Lewis engineering report, Coelho's expert. In the current action, in order to get summary judgment, they have to negate the mere possibility. There was never the mere possibility of coverage for the underlying claims. They submitted no expert report. Even in the underlying – in the district court action, they never got an expert. We went out and got an expert to show, look, that mere possibility existed. So for them to say, well, we didn't have that expert report proving that there was a mere possibility back in 2006 or whenever means that we get summary judgment in 2011 doesn't follow. They never established that there wasn't the mere possibility. And St. Paul's expert's report established that, in fact, there was. Okay. Why don't you turn to loss of use or Judge Fischer's question? I will. The – the – I did want to address – I hope I have – Judge Berzon? Or do I have the names back? No, you're right. You're right. Go ahead. At Judge Berzon's point that I believe you said that no one's saying that this was conversion. But that actually is what the district court held. They held that the leaking of the water from the pipe constituted conversion. Well, I mean no one meaning you and your insured are not saying that. That's not a conversion. There's not an underlying conversion case here. Correct. I'm sorry. In Collins, there was an underlying conversion case. Correct. There's two arguments here where I think the – there could have been liability against Vatnay's in favor of Coelho. One is that this was physical injury or damage to water. The water leaked out into the surrounding soil, mixed with the soil, became mud, was unrecoverable. That water was damaged. So there's that, which would be covered under steadfast complaint. But the argument seems to be that even so, if you can't get the water back, it's loss of water and not loss of use, and that's determination. I disagree with that. The – that's physical damage to water. And then regardless of that, there also was a viable claim for loss of use of water. Now – So his answer to that seems to be maybe so, but you didn't make it, nor did your insured. That's my understanding. Well, his claim is that Coelho did not make that claim.  Right. So Coelho didn't make a claim for loss of use of water. Your argument is there was an argument they could have made in the potential, right? That's where we are? Exactly. What we are governed by in determining whether there's coverage, what St. Paul's governed by and what St. Paul – steadfast is governed by is the facts, not the specific theories that are alleged by Coelho. The fact is that there were facts that could have given rise to a theory for loss of use. That triggers coverage. It would be to St. Paul's benefit if it didn't, just like it was to steadfast benefit if it didn't. But it does, and it triggers coverage for both entities. I supposedly thought that was right. Would that be enough to give rise to the duty to defend and the whole rest of the case goes away? I'm not sure I follow. In other words, if that were right, that in itself would give rise to the duty to defend, and whether there was anything else that could have been recovered wouldn't matter. Is that right? That is accurate. And how much money are we talking about? Approximately. I don't need the exact amount. I'm just curious. I believe the defense fees were somewhere around $200,000. Okay. The last point I wanted to make – He says no. Your opponent is shaking his head. It was about $100,000. So it's not a million-dollar case, but it's significant. Thank you. Okay. Thank you very much. Interesting questions raised, and the case just heard will be submitted.
judges: Thomas, Fisher, Berzon